**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ROBERT L. BLASCHKE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CA-699-XR** |
| | ) | |
| **CITY OF HELOTES, TEXAS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**ORDER**

Plaintiff Robert Blaschke filed suit against the City of Helotes (Helotes) for retaliation. According to Plaintiff, Helotes terminated him from his position as a police officer because of his support of Sharon Barnette, a former Helotes police officer who filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination against Helotes. In her EEOC complaint, Barnette apparently designated Plaintiff as a witness who could support her allegations against her former employer. Shortly thereafter, Plaintiff was terminated from his position.

Defendant Helotes filed a motion for summary judgment (Docket No. 15) arguing that Plaintiff has failed to raise a genuine issue of material fact as to his Title VII and ADEA retaliation claims. Having reviewed the briefings and relevant case law, the Court GRANTS in part and DENIES in part Defendant's motion.

-1-

**Factual Background**

Helotes hired Plaintiff as a part-time police officer in October 2000 and promoted him to a full-time officer in July 2001. He served as a Helotes police officer until his termination on July 20, 2004.

During his tenure as a Helotes officer, Plaintiff served alongside Officer Sharon Barnette. According to Barnette, one of her supervisors, Sergeant Robert Hunley, sexually harassed her and made a number of inappropriate remarks toward her. In one instance, Sergeant Hunley purportedly told her that "he was driving by my house and one day he would stop and I would have no choice but to have sex with him."[1] On another occasion, Hunley supposedly asked Barnette "how big [her] nipples are."[2] Sometime around December 2002, Barnette alleges that Hunley referred to another employee as "Officer Fellatio" in front of her.[3]

Office Barnette asserted that Sergeant Hunley was not the only officer who sexually harassed her. She also made an harassment assertion against Officer Ovidio Flores who, according to Barnette, changed his clothes in front of her, saying "it wasn't anything that [she hadn't] already seen."[4]

After Barnette started complaining to leaders within the city government and police department about the acts of harassment and discrimination, she alleges that Blaschke and fellow officer Dale Walker were the only officers that would stand by her. Barnette alleges that she was ostracized by her fellow officers for her complaints, as were Walker and Blaschke because they

---

[1] Docket No. 17, Declaration of Sharon Barnette at 1.

[2] *Id.*

[3] *Id.* at 3.

[4] *Id.*

openly associated with her.

In May 2004, Officer Barnette was terminated. She filed an EEOC Charge of Discrimination against Helotes that same month in which she designated Blaschke as a witness who could help support her allegation of wrongful termination. Shortly thereafter, Blaschke was terminated from his position.

**Analysis**

Summary Judgment Standard

The Federal Rules provide that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[6] Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present evidence setting forth "specific facts showing a genuine issue for trial."[7]

Retaliation against Plaintiff Related to Officer Barnette's Harassment and Retaliation Claims

Plaintiff sued Helotes for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. "To establish a prima facie case of retaliation, [a plaintiff] must demonstrate

---

[5] FED. R. CIV. P. 56(c).

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[7] FED. R. CIV. P. 56(e)(2).

that: 1) [he] engaged in a statutorily protected activity, 2) [he] suffered an adverse employment action, and 3) there was a causal link between the protected activity and the adverse employment action."[8] As for step three, "the causal link need not rise to the level of 'but for' causation at the prima facie stage."[9] In other words, a plaintiff "need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision."[10]

Turning to the facts of this case, Plaintiff has provided evidence to establish that he was willingly listed as a witness in Officer Barnette's EEOC wrongful termination case. This action qualifies as statutorily protected activity.

Secondly, Plaintiff clearly suffered an adverse employment action when he was terminated.

Thirdly, Plaintiff has met his burden of establishing a causal link between his engagement in the protected activity and his termination. Helotes fired Plaintiff approximately two months after it apparently learned he would be a witness for Barnette against the city.[11] Furthermore, before his termination, Plaintiff alleges that because he associated with and stood up for Officer Barnette, he faced discrimination similar to that encountered by Officer Barnette. According to Plaintiff, he was denied off-duty security jobs that he had formerly received, was treated poorly by his fellow officers,

---

[8] Russell v. University of Texas of Permian Basin, 234 Fed. Appx. 195, 205 (5th Cir. 2007).

[9] *Id.*

[10] Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).

[11] *See* Docket No. 17, Declaration of Sharon Barnette at 4. "Robert Blaschke knew about the retaliation against me and the reason for my termination, which I revealed during the appeal of my termination to the Mayor. I asked Robert Blaschke if I could use him as a witness for my EEOC complaints and federal lawsuit, and he agreed. I informed the City of Helotes that Robert Blaschke was a witness for my lawsuit."

-4-

and had his truck vandalized.[12]

Because Plaintiff has established a prima facie case of retaliation, the burden "shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action."[13] In its termination letter to Plaintiff, Helotes cited two complaints against Plaintiff as the basis for his dismissal.[14] The first complaint was filed in April 2004 by citizen Michael Young, who accused Plaintiff of improperly discussing Mr. Young's personal and family affairs in the presence of others. The second complaint was filed by Officer Ovidio Flores in June 2004. According to Flores, Plaintiff failed to respond to an aggravated robbery call when he was on duty.

These were the only two incidents listed as grounds for Plaintiff's termination in the letter sent to him by Chief of Police Fritz Bohne on July 20, 2004. Plaintiff's personnel file, however, contained other remonstrations against him. Because these were not mentioned in the termination letter, a factual issue exists as to what role, if any, they played in Helotes' decision to fire Plaintiff.

The remonstrations are found in Plaintiff's periodic performance evaluation reports. In the January 17, 2002 report, Helotes noted the following deficiencies: Plaintiff had been tardy in reporting for duty at the specified time; Plaintiff wasted valuable patrol time by conversing too much with the public and advising defendants in municipal court; Plaintiff offered excuses rather than accept guidance from his superiors; Plaintiff often questioned or attempted to analyze the directions given to him by his superiors; and Plaintiff did not always follow a logical course of action in

---

[12] *See* Docket No. 17, Declaration of Robert Blaschke at 4.

[13] *Principi*, 289 F.3d at 345.

[14] Docket No. 15, Exhibit A, Termination Letter dated July 20, 2004.

response to his superiors' directions.[15]

On March 29, 2002, Plaintiff was written up for errors in citation, which included wrong arrest titles and wrong court dates. According to the disciplinary record filed, these errors were "becoming a daily occurrence."[16]

On February 11, 2003, Plaintiff was cited for failing to submit an arrest report for supervisor's review before the report was delivered to a magistrate's office for booking.[17]

Finally, in April 2003, Plaintiff was reprimanded for allegedly mishandling a dog biting incident.[18]

Because Helotes asserts it relied on the sum total of these mistakes and misjudgments by Plaintiff to reach its termination decision, it has "demonstrate[d] a legitimate nondiscriminatory purpose for the employment action."[19]

Because the Defendant has met its burden, the focus shifts back to the Plaintiff who must show "that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact."[20]

In support of his position that Defendant's stated reasons for his termination were pretexts,

---

[15] *See* Docket No. 17, Helotes' reports accompanying the Declaration of Robert Blaschke.

[16] *Id.* at March 29, 2002 report accompanying the Declaration of Robert Blaschke.

[17] *See Id.* at February 11, 2003 report accompanying the Declaration of Robert Blaschke.

[18] *See Id.* at May 14, 2003 report accompanying the Declaration of Robert Blaschke.

[19] *Principi*, 289 F.3d at 345.

[20] *Id.*

Plaintiff refers back to the disparate treatment he received from his superiors and fellow officers because of his support for Officer Barnette. This disparate treatment included denial of extra-duty assignments he had previously received, alleged vandalizing of his truck, and a general social ostracism.

Moreover, Plaintiff includes a copy of the request made by Police Chief Bohne to promote him from his position as a probationary full time officer (the title he was given when he was promoted from part time to full time status) and provide him a salary increase. That request was made January 17, 2002, the same date Plaintiff received his first performance evaluation report that included negative remarks. The fact that the performance evaluation report was issued the same day that Chief Bohne requested a promotion and raise for Plaintiff provides circumstantial evidence regarding pretext and the issue of just how serious the deficiencies alleged in the report were.

Next, Plaintiff refers to his last performance evaluation report, which was completed in December 2003. In that report, Plaintiff is listed as having met or exceeded standards in every category. Furthermore, his supervisor wrote that "Officer Blaschke conducts his daily duties commensurate to his experience level." This report also calls into question how serious and unusual the deficiencies filed against Plaintiff before that time were.

The only charges of misconduct or negligence of duty alleged against Plaintiff after December 2003 came in the form of a citizen complaint filed by Michael Young and an officer complaint filed by Ovidio Flores.

As for Michael Young's April 2004 complaint, it is unclear from the documents before the Court whether or how Plaintiff was formally reprimanded or punished.

As for the June 2004 complaint filed by Officer Flores for Plaintiff's alleged failure to

respond to a robbery call, Plaintiff attempts to provide context for this complaint. According to Plaintiff, the City Secretary paged him during his lunch break to inform him that a man had arrived at the police station to report an aggravated robbery. The City Secretary had not realized that Plaintiff had checked out for lunch, and although it was her understanding that officers on lunch were still supposed to respond to calls, she acknowledges that she probably would not have called Plaintiff had she known he was out for lunch.[21]

After Plaintiff responded that he was at lunch, the City Secretary contacted Officer Flores, who was the other officer on duty at that time. Officer Flores responded to the call, but then, according to Plaintiff, sent Plaintiff a text that read, "U R LAZY AS U R STUPID. YES, U CAN CRY 2 CHIEF FOR HARASSMENT."[22] Shortly thereafter, Officer Flores filed a formal complaint against Plaintiff that led to his termination.

As noted above, Officer Flores was the one who allegedly disrobed before Officer Barnette, telling her "it wasn't anything that [she hadn't] already seen."[23] Officer Flores knew that Blaschke was one of the few officers who continued to support Officer Barnette after she started making harassment allegations. It is reasonable to infer that Officer Flores also knew that Officer Barnette had been fired for engaging in an allegedly improper investigation of Flores that had started with information provided by Blaschke.

Blaschke had told Officer Barnette about a young woman who lived in the same apartment complex in which Officer Flores lived. According to Blaschke, Officer Flores made inappropriate

_____

[21] Docket No. 15, Exhibit D at 20.

[22] Docket No. 17, Declaration of Robert Blaschke at 4.

[23] Docket No. 17, Declaration of Sharon Barnette at 3.

comments to this woman that made her feel uncomfortable. Based upon this information, Officer Barnette undertook her own investigation into Officer Flores' behavior at the apartment complex. When her superiors learned of this, they purportedly fired her for conducting an improper investigation and tarnishing the reputation of a fellow officer.[24]

This termination took place in May 2004. When Officer Barnette filed her EEOC complaint that same month, she listed Blaschke as a witness, in part, because he could testify to the situation with Officer Flores that Helotes claimed led to her dismissal. Very soon thereafter, Officer Flores filed a complaint against Blaschke that purportedly led to his termination in July 2004.[25] Thus, a mere two months after Officer Barnette listed Blaschke as a witness in her EEOC complaint for wrongful termination, a complaint that factually involved Flores, Blaschke, and Helotes, Officer Blaschke was fired. In other words, two months after Blaschke engaged in the protected activity of supporting Officer Barnette's EEOC wrongful termination complaint, Helotes took an adverse employment action against him. As the Fifth Circuit has found, close temporal proximity between engagement in protected activity and an adverse employment action can "raise an issue of fact as to whether retaliation was a motivating factor in [Plaintiff's] termination."[26]

Having considered all the evidence before it in light of the timing and circumstances of Blaschke's termination, the Court finds that Blaschke has created a genuine issue of material fact as to whether Helotes' stated non-retaliatory reason for his termination was pretextual. Accordingly, Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim is denied.

---

[24] *See* Docket No. 17, Declaration of Robert Blaschke at 3.

[25] Officer Flores filed his complaint against Blaschke on June 4, 2004.

[26] Richardson v. Monitronics International, Inc., 434 F.3d 327, 335 (5th Cir. 2005).

<u>Retaliation against Plaintiff Related to Officer Walker's ADEA Claim</u>

Officer Dale Walker, one of the officers who, along with Blaschke, stood up for Officer Barnette after she made assertions of sexual harassment, filed a case with this Court in which he alleged, amongst other things, that he was discriminated against in violation of the Age Discrimination in Employment Act (ADEA). It is unclear how Plaintiff believes his own allegedly wrongful termination relates to Officer Walker's ADEA claim. Plaintiff never alleges that he supported Officer Walker in his ADEA claim against Helotes, or that if he did, he was retaliated against for doing so. Rather, Plaintiff's allegations of retaliation result solely from his support of Officer Barnette, who did not file an ADEA claim against Helotes. Therefore, because there is no factual basis to support Plaintiff's ADEA claim, Defendant's motion for summary judgment as to that claim is granted.

<b>Conclusion</b>

Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's Title VII retaliation claim survives summary judgment, while his ADEA claim does not.

Additionally, this case is currently set for trial on June 30, 2008. Because of a conflict on the Court's calendar, that date needs to be changed. Jury Selection/Trial will now commence on Monday, **August 18, 2008** at 9:30 a.m. in Courtroom No. 3, First Floor of the John H. Wood, Jr. Courthouse, 655 E. Durango, San Antonio, Texas 78206. The pretrial conference will take place on Thursday, **August 7, 2008** at 9:30 a.m. The parties shall file their pretrial submissions in the form set out in Rule CV-16(e) to the Local Rules for the Western District not later than Monday, **August 4, 2008**.

It is so ORDERED.

SIGNED this 15th day of May, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE